UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL MCDUFFIE,<br><br>　　Plaintiff,<br><br>　　v.<br><br>SERGEANT JOHN LOONEY,<br><br>　　Defendant. | No. 16 C 8860<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Daniel McDuffie, appearing pro se, alleges that Chicago Police Sergeant John Looney seized his property in violation of the Fourth Amendment by forcing him to vacate a house he was renovating at 10655 South Sangamon Street in Chicago. R. 44. Sergeant Looney has moved for summary judgment. R. 103. That motion is granted for the following reasons.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a

genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

In some of his responses to Sergeant Looney's statement of material facts, McDuffie asserts that he "has not received any of the referenced and cited exhibits or transcripts." *See, e.g.*, R. 110 at 3 (¶ 8). This is the first time McDuffie has raised any issue with the discovery process or his ability to address summary judgment, despite several status hearings during the course of discovery which provided him with opportunities to bring any issues to the Court's attention. On January 30, 2018, the Court set a discovery deadline of June 1, 2018. On June 4, 2018, the Court granted Sergeant Looney's request for a two-month extension of discovery. At that hearing, Sergeant Looney's counsel noted that McDuffie's deposition had been taken, McDuffie had responded to interrogatories, and McDuffie had issued interrogatories of his own, which Sergeant Looney answered. McDuffie did not dispute this summary. Defense counsel stated that they intended to depose an individual from U.S. Bank (which claims rightful possession of the Sangamon house), and the Court reminded McDuffie that he had the right to attend depositions and ask questions. McDuffie stated that he believed that some of Sergeant Looney's interrogatory answers were false. The Court explained how McDuffie could raise any factual disputes on summary judgment.

2

The parties again appeared for a hearing on August 7, 2018, shortly before the close of discovery. The Court set a deadline of September 21, 2018 for Sergeant Looney to file a motion for summary judgment. The Court also ordered Sergeant Looney to provide McDuffie with the Northern District's instructions for pro se litigants regarding responding to summary judgment. (Sergeant Looney later provided McDuffie with that notice. *See* R. 104.) McDuffie did not raise any issues with discovery or the plan for summary judgment. McDuffie stated that he had no questions about the process when the Court asked. The parties reached agreement on a briefing schedule and have not appeared in Court since.

McDuffie's contention that he has not received certain discovery materials is too late. Nevertheless, considering McDuffie's pro se status, the Court might be inclined to investigate McDuffie's contention further if it could potentially affect the outcome of the case. But McDuffie does not argue that the discovery deficiencies he has identified impaired his ability to respond to the summary judgment motion or ask the Court for any particular relief in this regard. Moreover, the Court has determined that it can address Sergeant Looney's motion for summary judgment assuming the truth of the facts as McDuffie describes them in his summary judgment papers (including that Sergeant Looney gave him only two hours to remove his equipment from the house and threatened McDuffie with arrest). Thus, it is unnecessary for the Court to delve further into the discovery process.

According to McDuffie, he began performing renovations on the Sangamon house for the former owner. McDuffie alleges further that when the former owner

3

couldn't pay for the renovations in 2014, he quitclaimed the Sangamon house to McDuffie. McDuffie continued to spend money to renovate the house.

U.S. Bank filed a foreclosure action on the Sangamon house in state court in 2016. On March 10, 2016, U.S. Bank obtained an order of possession. *See* R. 50-1. McDuffie was a participant in those proceedings. *See* R. 36.

On June 24, 2016, individuals arrived to "board up" the Sangamon house on the authority of the order of possession obtained by U.S. Bank, and demanded that McDuffie and the workers assisting him vacate the property. McDuffie refused and called the police. Eventually Sergeant Looney arrived and examined both the order of possession and McDuffie's quitclaim deed. Sergeant Looney determined that McDuffie did not have a right to be on the property and ordered him to leave within two hours or face arrest. McDuffie asked for more time in order to be able to remove all his equipment, which Sergeant Looney denied. Sergeant Looney left other officers to ensure that McDuffie complied with his order. McDuffie was not able to remove all of his equipment within the two-hour time limit. He alleges that Sergeant Looney's actions constitute an unreasonable seizure of the personal property McDuffie kept in the Sangamon house.

## Analysis

Sergeant Looney argues that he is entitled to summary judgment based on qualified immunity. "The doctrine of qualified immunity shields public officials from civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Allin v. City*

*of Springfield*, 845 F.3d 858, 862 (7th Cir. 2017). Two questions are relevant to such an analysis: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional rights, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Id.* "A right is clearly established if it is sufficiently clear that any reasonable official would understand that his or her actions violate that right, meaning that existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

The Seventh Circuit's recent decision in *Allin v. City of Springfield* is instructive here. In that case, a woman asked a police officer acquaintance to accompany her to retrieve her belongings from the residence of a former boyfriend. The couple disputed ownership of a motorcycle. The woman possessed the certificate of title and claimed that the man had given it to her as a gift. The man claimed to have reported the certificate stolen several days earlier. The police officer ran a title search and learned that the motorcycle was registered to the woman. The police officer also ran a search but was unable to confirm that the man had reported the certificate stolen. The police officer announced that the woman could take the motorcycle and left. After no police were on the scene any longer, the woman left with the motorcycle. *Id.* at 860-61.

The man sued the police officer. The district court denied the officer's motion for summary judgment. The Seventh Circuit reversed. The court noted that under

5

Illinois law a certificate of title creates a rebuttable presumption of ownership, and that the police had run a title search and stolen property search. The court reasoned that the police officer was entitled to qualified immunity because "the evidence [was] pointing to [the woman] as the owner of the motorcycle," and there was no evidence that the police officer "acted plainly incompetently or that he knowingly violated that law." *Id.* at 863. The Seventh Circuit held that the plaintiff had not identified precedent establishing that the police officer's conduct violated "clearly established" constitutional rights, and so he was entitled to qualified immunity. *Id.*

*Allin* shows that there is no clearly established Fourth Amendment right to be free from a police officer determining ownership of disputed property. When two people dispute ownership of property and the police have been called to settle the dispute, it stands to reason that a determination of possession must be made. The only other option would be for the police to take possession of the property until a judicial resolution can be made. In either instance, at least one of the individuals claiming ownership would have a claim for an unreasonable seizure akin to McDuffie's or the plaintiff's in *Allin*. In such exigent circumstances, it is not surprising that no established right exists preventing the police from at least temporarily resolving disputed possession.

The Court notes that the basis for Sergeant Looney's actions is somewhat weaker than that for the officer in *Allin* since a certificate of title creates a rebuttable presumption of ownership, and the officer in *Allin* ran a title search. By contrast—taking McDuffie's allegation as true—Sergeant Looney made his decision

6

based on unauthenticated papers presented to him on the scene. (Sergeant Looney of course disputes this characterization.) Moreover, it is not clear that a Chicago Police Officer, as opposed to a Cook County Sheriff's Deputy, has the authority to take the action Sergeant Looney did in this case. *See McDuffie v. Loney*, 2017 WL 6039949, at *3 (N.D. Ill. Dec. 6, 2017) (citing 55 ILCS 5/3-6019 and *Kernats v. O' Sullivan*, 35 F.3d 1171, 1173 n.3 (7th Cir. 1994)). Nevertheless, there is no clearly established authority to the contrary. For this reason, Sergeant Looney is entitled to qualified immunity for his actions, and it is unnecessary for the Court to address whether Sergeant Looney's conduct was unreasonable and constituted a violation of the Fourth Amendment. *See Lovett v. Herbert*, 907 F.3d 986, 991-92 (7th Cir. 2018) ("We have discretion to choose which prong to address first, and since the second prong is dispositive here, we address only whether the right at issue was clearly established.").

McDuffie argues that "the application of qualified immunity is premature at the pleading stage and that it is well established that as a matter of law the Court must, for purposes of construction and application of Looney's request for qualified immunity, accept all well-pleaded factual allegations in the complaint as true, [draw] all reasonable inferences in favor of Plaintiff, and determine whether the claims plausibly suggest entitlement to relief." R. 112 at 12. Contrary to McDuffie's argument, the case is at summary judgment, not the pleading stage, and there is no question that it is appropriate for the Court to consider Sergeant Looney's qualified immunity argument. But, as discussed, the Court has analyzed the case taking the

7

facts in the light most favorable to McDuffie. The Court has found that those facts require granting qualified immunity to Sergeant Looney.

It would be understandable for a pro se litigant to be confused or frustrated by application of the doctrine of qualified immunity. It is complicated and has generated much debate, even at times among justices of the United States Supreme Court. *See Saucier v. Katz*, 533 U.S. 194 (2001). The bottom line, however, is that the law protects a police officer from liability if the officer's actions are a product of a reasonable mistake about what the law requires. In other words, if it was reasonable for the officer to believe he was acting reasonably, he will not be liable for his actions under the Fourth Amendment even if the officer acted unreasonably. This is the balance the law has struck between individual rights under the Fourth Amendment and the difficult decisions police officers must make on a daily basis.

## Conclusion

For these reasons, Sergeant Looney's motion for summary judgment, R. 103, is granted. The status hearing set for Tuesday, December 18, 2018, is vacated. McDuffie's motion for extension of time, R. 111, is granted in that the Court considered all of McDuffie's papers regardless of the date they were filed.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: December 17, 2018

8